1 | Thomas J. Polis, Esq. – SBN 119326
**POLIS & ASSOCIATES**
2 | **A PROFESSIONAL LAW CORPORATION**
3 | 19800 MacArthur Boulevard, Suite 1000
Irvine, California 92612-2433
4 | Telephone: (949) 862-0040
Facsimile: (949) 862-0041
5 | Email: tom@polis-law.com

6 | Special Litigation Counsel for
Richard A. Marshack, Chapter 7 Trustee



**FILED & ENTERED**

**NOV 13 2019**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** duarte **DEPUTY CLERK**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| In re | Case No. 8:19-bk-11546-ES |
|---|---|
| Joseph Ra, | Chapter 7 |
| Debtor. | **AMENDED ORDER PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9016 FOR AN EXAMINATION OF: JOSEPH RA, DARREN MICHAEL RICHIE, CHRISTOPHER LEE, JONG HEA RA, VIKEN CHELEBIAN AND DAVID SPREEN AND FOR PRODUCTION OF DOCUMENTS**<br><br>**[ONLY CHANGE TO THE PREVIOUSLY ENTERED ORDER IS ALLOWING A REPRESENTATIVE FROM THE INTERNAL REVENUE SERVICE and EXAMINATIONS RECORINGS BY A VIDEOGRAPHER]**<br><br>**[NO HEARING REQUIRED]** |

The Court having reviewed Richard A. Marshack, Chapter 7 Trustee's ("Marshack") *Motion for an Order Re: Request Court Amend Previously Entered Order (ECF No. 70) re: Chapter 7 Trustee's Rule 2004 Examination re: Allow IRS Representative to Appear During Examinations and Allow for a Videographer to Video Examinations of Joseph Ra, Darren Michael Richie, Christopher Lee, Jong Hea Ra, Viken Chelebian and David Spreen and for Production of Documents* and good cause appearing, it is hereby

**IT IS ORDERED** that the Joseph Ra, Darren Michael Richie, Christopher Lee, Jong Hea Ra,

- 1 -

**ORDER APPROVING 2004 EXAMINATION AND PRODUCTION OF DOCUMENTS**

Viken Chelebian and David Spreen (collectively "Examinees"), pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, shall appear to be examined and produce the following "documents" as that term is defined hereto and incorporated by this reference in this Order, at Richard A. Marshack, Chapter 7 Trustee's counsel's office located at **19800 MacArthur Boulevard, Suite 1000, Irvine, California 92612-2433** as follows:

| Deponent Name | Date/Time/Place for Rule 2004 Examinations | Date/Time/Place of Production of Documents |
|---|---|---|
| Joseph Ra | Date:11/22/2019<br>Time:10:00 am<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 | Date:11/14/2019<br>Time:10:00 am<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 |
| Darren M. Richie | Date:11/21/2019<br>Time:9:00 am<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 | Date:11/14/2019<br>Time:10:00 am<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 |
| Christopher Lee | Date:11/18/2019<br>Time:10:00 am<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 | Date:11/14/2019<br>Time:10:00 am<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 |
| Jong Hea Ra | Date:11/20/2019<br>Time:10:00 am<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 | Date:11/14/2019<br>Time:10:00 am<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 |
| Viken Chelebian | Date:11/19/2019<br>Time:10:00 am<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 | Date:11/14/2019<br>Time:10:00 am<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 |
| David Spreen | Date:11/19/2019<br>Time:2:00 pm<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 | Date:11/14/2019<br>Time:10:00 am<br>Place: 19800 MacArthur Blvd., Suite 1000, Irvine, CA 92612 |

**DOCUMENTS TO BE PRODUCED ON NOVEMBER 12, 2019**

In order to assist in the investigation of Richard A. Marshack's Rule 2004 Examination, each of the Examinees shall produce the Documents itemized in Exhibit "A", inclusive attached hereto.

**IT IS FURTHER ORDERED** that the Rule 2004 Examinations ordered shall be open only to the Chapter 7 Trustee's Special Litigation Counsel, the Debtor and his counsel, the Examinee being examined, a representative from O'Gara Coach Company, LLC, and a representative, from the Internal Revenue Service, Ms. Dominque Franks.

**ORDER APPROVING 2004 EXAMINATION AND PRODUCTION OF DOCUMENTS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS FURTHER ORDERED** that the Rule 2004 Examinations ordered herein may be additionally recorded via a videographer, at the Chapter 7 Trustee's discretion.

####

Date: November 13, 2019

*Erithe A. Smith*
Erithe Smith
United States Bankruptcy Judge

- 3 -

**ORDER APPROVING 2004 EXAMINATION AND PRODUCTION OF DOCUMENTS**

EXHIBIT "A"

Request for Production of Documents and Things For <u>JOSEPH RA</u>
*In re Joseph Ra*, Bankruptcy Case No. 8:18-bk-11546-ES

I.

## DEFINITIONS

1. The term "DEBTOR" shall mean and refer to Joseph Ra, an individual.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure, and shall include all tangible sources of information, including but not limited to: all paper, film, tape, computer drive or other medium upon which any electronic, computer stored, verbal, graphic, or pictorial information or image can be recorded, stored, written, printed, typed, drawn, produced, or reproduced in any fashion including all correspondence, memoranda, interoffice and intra-office communications, handwritten and other notes, analyses, agreements, contracts, books, files, charts, quotations, accounting records, audit work papers, worksheets, costs sheets, rate sheets, ledgers, price quotations, proposals, bids, receipts, manuals, lists, tables, financial analyses, spreadsheets, diagrams, studies, outlines, records, reports, agendas, minutes, photographs, drawings, sketches, brochures, schedules, calendars (paper and electronic), diaries, electronic mail ("email"), instant messages (and the equivalent), text messages, computer hard drives, computer servers, discs, CDs, DVDs, tapes, computer back-up tapes, video or audio tape recordings, voicemail messages, photocopies, computer-sorted or computer-retrievable information, information from hand-held electronic devices (including Blackberries, iPhones, mobile phones, pagers and other electronic mechanisms) and computer print-outs and programs or other data compilations from which information can be obtained or translated into usable form. The definition of "document" encompasses not only the original but also any copy reflecting or containing, or having attached thereto, any alterations, notes, comments, or other writing or material not appearing on the original, and shall also include drafts, revisions of drafts and other preliminary or preparatory material, from whatever source, underlying, supporting, or used in the preparation of any "document." The term "document" also includes any removal "post-it" notes, tape flags, or other attachments or exhibits affixed to any of the foregoing.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE" means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term "COMMUNICATIONS" means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, e-mails, facsimiles, letters, memoranda, meetings, notes, speeches, or other transfer of information, whether written, oral, or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests transcribes or records any such communication.

6. The term "YOU" or "YOUR" shall mean and refer to Joseph Ra.

7. The term "PETITION DATE" shall refer to and mean April 24, 2019, the date that DEBTOR filed a voluntary chapter 7 petition, Bankruptcy Case No. 8:19-bk-11546-ES.

8. The term "RELEVANT PERIOD" means and refers to the seven year period commencing on April 24, 2012, and ending on the PETITION DATE, i.e., April 24, 2019.

9. The term "DEBTOR AFFILIATE(S)" shall mean and refer to entities in which the Debtor had or has an ownership interest, or over which the Debtor has exercised or is exercising control (i.e., corporations, limited liability companies and/or partnerships).

10. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

II.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

### Documents Regarding the Debtor's Personal Finances

- Any and all federal and state tax returns prepared and/or filed, inclusive of all schedules and attachments.
- Any and all audited and unaudited financial statements.
- Any and all K-1s or other similar reports of owner/shareholder income, losses, deductions and credits from any of the Debtor Affiliates.
- Employment records, including but not limited to W-2's and W-9's, issued to the Debtor from any employer, individual or entity.

- Any and all Documents regarding wages, commissions, or other sources of income paid to the Debtor during the time the Debtor worked for O'Gara.
- Any and all Documents regarding wages, commissions, or other sources of income paid to the Debtor during the time the Debtor worked for Buena Park Eurocars, LLC dba Shelly BMW.
- Any and all Documents regarding loans made by the Debtor to any person or entity.
- All bank statements and cancelled checks from any bank or investment account held in the Debtor's name or for the Debtor's benefit.
- Any and all Documents related to any wire transfers for each and every bank account held in the Debtor's name.
- Any and all Documents related to any "dba" used to operate for or on behalf of the Debtor.
- Any and all written agreements between you and the Debtor.
- Any and all Documents regarding contracts or agreements to which the Debtor is a party.
- Any and all Documents regarding settlement agreements involving the Debtor in non-litigated and litigated matters.
- Any and all Documents evidencing money paid by the Debtor in relation to legal disputes, whether or not litigated.
- Any and all Documents evidencing money paid by to the Debtor in relation to legal disputes, whether or not litigated.
- Any and all Documents evidencing money paid by the Debtor to you for any purpose.
- Any and all Documents evidencing money paid to Debtor on behalf of the Debtor Affiliates for any purpose.
- Any and all Documents evidencing money paid to you on behalf of the Debtor by a third party, whether a person or entity.
- Any and all Documents evidencing money paid to you on behalf of the Debtor by each of the Debtor Affiliates.

### Documents Regarding Money Loaned or Owed

- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, and Communications evidencing a loan arrangement with Debtor, or with any of the Debtor Affiliates.
- Any and all Documents and Communications, including all cancelled checks, evidencing payments to the Watermarke Tower Apartments ("Watermarke") located in Downtown Los Angeles either made on Debtor's behalf or on behalf of any of the Debtor Affiliates.
- Any and all Documents, including all cancelled checks, evidencing payments made to Debtor by the Debtor Affiliates, by Jong Ra, by Christopher Lee, by David Spreen, by Viken Chelebian, or by Darren Richie.
- Any and all Documents, including all cancelled checks, evidencing payments made to the Debtor Affiliates, by Debtor, by Jong Ra, by Christopher Lee, by David Spreen, by Viken Chelebian, or by Darren Richie.
- Any and all Documents, including all cancelled checks, evidencing payments made by Debtor to any individuals or entities on behalf of the Debtor Affiliates.

### Documents Regarding the Debtor's Transactions with the Debtor Affiliates

- Any and all Communications from the Debtor regarding the management, direction, and/or operations of any and all of the Debtor Affiliates.
- Any and all corporate formation documents for any and all of the Debtor Affiliates, including all amendments.
- Any and all federal and state tax returns prepared and/or filed for the Debtor Affiliates, inclusive of all schedules and attachments.
- Any and all audited and unaudited financial statements of the Debtor Affiliates.
- Any and all K-1s issued on behalf of the Debtor Affiliates.
- Any and all bank statements and cancelled checks from any bank or investment account held in any and all of the Debtor Affiliates' names or for the Debtor Affiliates' benefit.
- Any and all Documents related to any wire transfers for each and every bank account held in any and all of the Debtor Affiliates' names.
- Any and all Documents identifying the members, officers, and directors for any and all of the Debtor Affiliates.

3

4

- Any and all written agreements to which the Debtor, and any or all of the Debtor Affiliates are a party.
- Any and all Documents reflecting monies paid into any and all of the Debtor Affiliates by or on behalf of the Debtor.
- Any and all Documents or Communications reflecting monies paid by any and all of the Debtor Affiliates to the Debtor at the direction of the Debtor.
- Any and all Documents or Communications reflecting monies paid by any and all of the Debtor Affiliates to any individual or entity at the direction of the Debtor, or on the Debtor's behalf.
- Any and all Documents reflecting transfers of property to any and all of the Debtor Affiliates made by or on behalf of the Debtor, or made at the Debtor's direction.
- Any and all Documents reflecting transfers of property from any and all of the Debtor Affiliates to the Debtor, or made at the Debtor's direction.
- Any and all written agreements to which any of the Debtor Affiliates is a party, including without limitation agreements to rent or lease real property, agreements to rent or lease personal property, settlement agreements in litigated disputes, and settlement agreements in non-litigated disputes.
- Any and all vehicle rental agreements contemplated by California Civil Code section 1939.01, et seq. during the years 2016 through 2019 entered into by Ra Global Resources, LLC doing business as Exotic Car Rentals DTLA and/or Exotic Car Rentals Downtown Los Angeles (collectively "Ra Global").
- Any and all Documents reflecting money paid for vehicle parking and storage by Ra Global.
- Any and all Documents reflecting transfers of real or personal property by Ra Global to any third person and/or entity, including without limitation the Debtor Affiliates.

5

---

**Request for Production of Documents and Things For <u>DARREN MICHAEL RICHIE</u>**
*In re Joseph Ra*, Bankruptcy Case No. 8:18-bk-11546-ES

I.

**DEFINITIONS**

1. The term "DEBTOR" shall mean and refer to Joseph Ra, an individual.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure, and shall include all tangible sources of information, including but not limited to: all paper, film, tape, computer drive or other medium upon which any electronic, computer stored, verbal, graphic, or pictorial information or image can be recorded, stored, written, printed, typed, drawn, produced, or reproduced in any fashion including all correspondence, memoranda, interoffice and intra-office communications, handwritten and other notes, analyses, agreements, contracts, books, files, charts, quotations, accounting records, audit work papers, worksheets, costs sheets, rate sheets, ledgers, price quotations, proposals, bids, receipts, manuals, lists, tables, financial analyses, spreadsheets, diagrams, studies, outlines, records, reports, agendas, minutes, photographs, drawings, sketches, brochures, schedules, calendars (paper and electronic), diaries, electronic mail ("email"), instant messages (and the equivalent), text messages, computer hard drives, computer servers, discs, CDs, DVDs, tapes, computer back-up tapes, video or audio tape recordings, voicemail messages, photocopies, computer-sorted or computer-retrievable information, information from hand-held electronic devices (including Blackberries, iPhones, mobile phones, pagers and other electronic mechanisms) and computer print-outs and programs or other data compilations from which information can be obtained or translated into usable form. The definition of "document" encompasses not only the original but also any copy reflecting or containing, or having attached thereto, any alterations, notes, comments, or other writing or material not appearing on the original, and shall also include drafts, revisions of drafts and other preliminary or preparatory material, from whatever source, underlying, supporting, or used in the preparation of any "document." The term "document" also includes any removal "post-it" notes, tape flags, or other attachments or exhibits affixed to any of the foregoing.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

---

4. The term "CORRESPONDENCE" means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term "COMMUNICATIONS" means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, e-mails, facsimiles, letters, memoranda, meetings, notes, speeches, or other transfer of information, whether written, oral, or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests transcribes or records any such communication.

6. The term "YOU" or "YOUR" shall mean and refer to Darren Michael Richie.

7. The term "PETITION DATE" shall refer to and mean April 24, 2019, the date that DEBTOR filed a voluntary chapter 7 petition, Bankruptcy Case No. 8:19-bk-11546-ES.

8. The term "RELEVANT PERIOD" means and refers to the seven year period commencing on April 24, 2012, and ending on the PETITION DATE, i.e., April 24, 2019.

9. The term "DEBTOR AFFILIATE(S)" shall mean and refer to entities in which the Debtor had or has an ownership interest, or over which the Debtor has exercised or is exercising control (i.e., corporations, limited liability companies and/or partnerships).

10. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

II.

**Documents Regarding Money Loaned to the Debtor or owed to the Debtor by you**

- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, and Communications3 evidencing a loan arrangement between you and the Debtor, or between you and the Debtor Affiliates.
- Any and all Documents and Communications evidencing a loan arrangement which caused you to make payments to the Watermarke Tower Apartments located in Downtown Los Angeles on behalf of the Debtor, or on behalf of any of the Debtor Affiliates.
- Any and all Documents, including all cancelled checks, evidencing payments made by you to the Watermarke Tower Apartments on behalf of the Debtor or on behalf of any of the Debtor Affiliates.
- Any and all Documents, including all cancelled checks, evidencing payments made by you to any individuals or entities on behalf of the Debtor.

---

- Any and all Documents, including all cancelled checks, evidencing payments made by you to any individuals or entities on behalf of the Debtor Affiliates. Documents Regarding Employment and/or Compensation or Commissions paid to Debtor.
- Any and all Documents evidencing payments related to wages, commissions or other forms of compensation arising from an employment relationship between you and the Debtor.
- Any and all Documents evidencing payments related to wages, commissions or other forms of compensation arising from an employment relationship between the Debtor and any entity of which you are an officer or in which you hold an ownership interest.
- Any and all Documents or Communications evidencing an employment relationship between you and the Debtor.
- Any and all Documents or Communications evidencing an employment relationship between you and the Debtor the Debtor and any entity of which you are an officer or in which you hold an ownership interest.

**Documents Regarding the Debtor's Interests in the Debtor Affiliates**

- Any and all Documents or Communications evidencing any interest of the Debtor in any company or entity of which you are a member, shareholder, officer, and/or director or in which you have an ownership interest.
- Any and all Schedule K-1s, corporate records and documents, all operating agreements, including any amendments thereto, which identify the Debtor as a shareholder, member, officer, or executive of any company or entity of which you are an officer or in which you have an ownership interest. Documents Regarding any Agreements for Goods and Services between you and the Debtor.
- Any and all Documents or Communications evidencing an agreement for the Debtor to provide goods or services to you.
- Any and all Documents or Communications evidencing an agreement for the Debtor to provide goods or services to any company or entity of which you are a member, shareholder, officer, and/or director or in which you have an ownership interest.
- Any and all Documents or Communications evidencing an agreement for any of the Debtor Affiliates to provide goods or services to you.
- Any and all Documents or Communications evidencing an agreement for any of the Debtor Affiliates to provide goods or services to any company or entity of which you are a member, shareholder, officer, and/or director or in which you have an ownership interest.

3

**Request for Production of Documents and Things For <u>CHRISTOPHER LEE</u>**
*In re Joseph Ra*, Bankruptcy Case No. 8:18-bk-11546-ES

I.

**DEFINITIONS**

1. The term "DEBTOR" shall mean and refer to Joseph Ra, an individual.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure, and shall include all tangible sources of information, including but not limited to: all paper, film, tape, computer drive or other medium upon which any electronic, computer stored, verbal, graphic, or pictorial information or image can be recorded, stored, written, printed, typed, drawn, produced, or reproduced in any fashion including all correspondence, memoranda, interoffice and intra-office communications, handwritten and other notes, analyses, agreements, contracts, books, files, charts, quotations, accounting records, audit work papers, worksheets, costs sheets, rate sheets, ledgers, price quotations, proposals, bids, receipts, manuals, lists, tables, financial analyses, spreadsheets, diagrams, studies, outlines, records, reports, agendas, minutes, photographs, drawings, sketches, brochures, schedules, calendars (paper and electronic), diaries, electronic mail ("email"), instant messages (and the equivalent), text messages, computer hard drives, computer servers, discs, CDs, DVDs, tapes, computer back-up tapes, video or audio tape recordings, voicemail messages, photocopies, computer-sorted or computer-retrievable information, information from hand-held electronic devices (including Blackberries, iPhones, mobile phones, pagers and other electronic mechanisms) and computer print-outs and programs or other data compilations from which information can be obtained or translated into usable form. The definition of "document" encompasses not only the original but also any copy reflecting or containing, or having attached thereto, any alterations, notes, comments, or other writing or material not appearing on the original, and shall also include drafts, revisions of drafts and other preliminary or preparatory material, from whatever source, underlying, supporting, or used in the preparation of any "document." The term "document" also includes any removal "post-it" notes, tape flags, or other attachments or exhibits affixed to any of the foregoing.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE" means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term "COMMUNICATIONS" means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, e-mails, facsimiles, letters, memoranda, meetings, notes, speeches, or other transfer of information, whether written, oral, or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests transcribes or records any such communication.

6. The term "YOU" or "YOUR" shall mean and refer to Christopher Lee.

7. The term "PETITION DATE" shall refer to and mean April 24, 2019, the date that DEBTOR filed a voluntary chapter 7 petition, Bankruptcy Case No. 8:19-bk-11546-ES.

8. The term "RELEVANT PERIOD" means and refers to the seven year period commencing on April 24, 2012, and ending on the PETITION DATE, i.e., April 24, 2019.

9. The term "DEBTOR AFFILIATE(S)" shall mean and refer to entities in which the Debtor had or has an ownership interest, or over which the Debtor has exercised or is exercising control (i.e., corporations, limited liability companies and/or partnerships).

10. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

II.

**REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

1. Any and all federal and state tax returns prepared and/or filed, inclusive of all schedules and attachments.

2. Any and all audited and unaudited financial statements.

3. Any and all K-1s or other similar reports of owner/shareholder income, losses, deductions and credits from any company in which the Debtor held or holds an ownership interest.

4. Employment records, including but not limited to W-2's and W-9's, issued to the Debtor from any employer, individual or entity.

5. Any and all Documents regarding wages, commissions, or other sources of income paid to the Debtor during the time the Debtor worked for O'Gara.

2

6. Any and all Documents regarding wages, commissions, or other sources of income paid to the Debtor during the time the Debtor worked for Buena Park Eurocars, LLC dba Shelly BMW.

7. Any and all Documents regarding loans made by the Debtor to any person or entity.

8. All bank statements and cancelled checks from any bank or investment account held in the Debtor's name or for the Debtor's benefit.

9. Any and all Documents related to any wire transfers for each and every bank account held in the Debtor's name.

10. Any and all Documents related to any "dba" used to operate for or on behalf of the Debtor.

11. Any and all written agreements between you and the Debtor.

12. Any and all Documents regarding contracts or agreements to which the Debtor is a party.

13. Any and all Documents regarding settlement agreements involving the Debtor in non-litigated and litigated matters.

14. Any and all Documents evidencing money paid by the Debtor in relation to legal disputes, whether or not litigated.

15. Any and all Documents evidencing money paid by to the Debtor in relation to legal disputes, whether or not litigated.

16. Any and all Documents evidencing money paid by the Debtor to you for any purpose.

17. Any and all Documents evidencing money paid to you on behalf of the Debtor by a third party, whether a person or entity.

18. Any and all Documents evidencing money paid to you on behalf of the Debtor by each of the Debtor Affiliates.

**Documents Regarding Money Loaned to the Debtor or owed to the Debtor**

- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, and Communications evidencing a loan arrangement between ETSI and the Debtor.

- Any and all Documents and Communications evidencing payments to the Watermarke Tower Apartments ("Watermarke") located in Downtown Los Angeles on the Debtor's behalf or on behalf of any of the Debtor Affiliates.

3

- Any and all Documents, including all cancelled checks, evidencing payments made either on the Debtor's behalf or on behalf of the Debtor Affiliates, to the Watermarke.

- Any and all Documents, including all cancelled checks, evidencing payments made to the Debtor by the Debtor Affiliates, by Jong Ra, by Christopher Lee, by David Spreen, by Viken Chelebian, or by Darren Richie.

- Any and all Documents, including all cancelled checks, evidencing payments made to the Debtor Affiliates, by the Debtor, by Jong Ra, by Christopher Lee, by David Spreen, by Viken Chelebian, or by Darren Richie.

- Any and all Documents, including all cancelled checks, evidencing payments made by the Debtor to any individuals or entities on behalf of the Debtor Affiliates.

**Documents Regarding the Debtor's Transactions with the Debtor Affiliates**

- Any and all Communications from the Debtor regarding the management, direction, and/or operations of any and all of the Debtor Affiliates.

- Any and all corporate formation documents for any and all of the Debtor Affiliates, including all amendments.

- Any and all federal and state tax returns prepared and/or filed for the Debtor Affiliates, inclusive of all schedules and attachments.

- Any and all audited and unaudited financial statements of the Debtor Affiliates.

- Any and all K-1s issued on behalf of the Debtor Affiliates.

- Any and all bank statements and cancelled checks from any bank or investment account held in any and all of the Debtor Affiliates' names or for the Debtor Affiliates' benefit.

- Any and all Documents related to any wire transfers for each and every bank account held in any and all of the Debtor Affiliates' names.

- Any and all Documents identifying the members, officers, and directors for any and all of the Debtor Affiliates.

- Any and all written agreements to which the Debtor, and any or all of the Debtor Affiliates are a party.

- Any and all Documents reflecting monies paid into any and all of the Debtor Affiliates by or on behalf of the Debtor.

4

- Any and all Documents or Communications reflecting monies paid by any and all of the Debtor Affiliates to the Debtor at the direction of the Debtor.

- Any and all Documents or Communications reflecting monies paid by any and all of the Debtor Affiliates to any individual or entity at the direction of the Debtor, or on the Debtor's behalf.

- Any and all Documents reflecting transfers of property to any and all of the Debtor Affiliates made by or on behalf of the Debtor, or made at the Debtor's direction.

- Any and all Documents reflecting transfers of property from any and all of the Debtor Affiliates to the Debtor, or made at the Debtor's direction.

- Any and all written agreements to which any of the Debtor Affiliates is a party, including without limitation agreements to rent or lease real property, agreements to rent or lease personal property, settlement agreements in litigated disputes, and settlement agreements in non-litigated disputes.

- Any and all vehicle rental agreements contemplated by California Civil Code section 1939.01, et seq. during the years 2016 through 2019 entered into by Ra Global Resources, LLC doing business as Exotic Car Rentals DTLA and/or Exotic Car Rentals Downtown Los Angeles (collectively "Ra Global").

- Any and all Documents reflecting money paid for vehicle parking and storage by Ra Global.

- Any and all Documents reflecting transfers of real or personal property by Ra Global to any third person and/or entity, including without limitation the Debtor Affiliates.

5

**Request for Production of Documents and Things For JONG HEA RA**
*In re Joseph Ra*, Bankruptcy Case No. 8:18-bk-11546-ES

I.

**DEFINITIONS**

1. The term "DEBTOR" shall mean and refer to Joseph Ra, an individual.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure, and shall include all tangible sources of information, including but not limited to: all paper, film, tape, computer drive or other medium upon which any electronic, computer stored, verbal, graphic, or pictorial information or image can be recorded, stored, written, printed, typed, drawn, produced, or reproduced in any fashion including all correspondence, memoranda, interoffice and intra-office communications, handwritten and other notes, analyses, agreements, contracts, books, files, charts, quotations, accounting records, audit work papers, worksheets, costs sheets, rate sheets, ledgers, price quotations, proposals, bids, receipts, manuals, lists, tables, financial analyses, spreadsheets, diagrams, studies, outlines, records, reports, agendas, minutes, photographs, drawings, sketches, brochures, schedules, calendars (paper and electronic), diaries, electronic mail ("email"), instant messages (and the equivalent), text messages, computer hard drives, computer servers, discs, CDs, DVDs, tapes, computer back-up tapes, video or audio tape recordings, voicemail messages, photocopies, computer-sorted or computer-retrievable information, information from hand-held electronic devices (including Blackberries, iPhones, mobile phones, pagers and other electronic mechanisms) and computer print-outs and programs or other data compilations from which information can be obtained or translated into usable form. The definition of "document" encompasses not only the original but also any copy reflecting or containing, or having attached thereto, any alterations, notes, comments, or other writing or material not appearing on the original, and shall also include drafts, revisions of drafts and other preliminary or preparatory material, from whatever source, underlying, supporting, or used in the preparation of any "document." The term "document" also includes any removal "post-it" notes, tape flags, or other attachments or exhibits affixed to any of the foregoing.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE" means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term "COMMUNICATIONS" means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, e-mails, facsimiles, letters, memoranda, meetings, notes, speeches, or other transfer of information, whether written, oral, or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests transcribes or records any such communication.

6. The term "YOU" or "YOUR" shall mean and refer to Jong Hea Ra.

7. The term "PETITION DATE" shall refer to and mean April 24, 2019, the date that DEBTOR filed a voluntary chapter 7 petition, Bankruptcy Case No. 8:19-bk-11546-ES.

8. The term "RELEVANT PERIOD" means and refers to the seven year period commencing on April 24, 2012, and ending on the PETITION DATE, i.e., April 24, 2019.

9. The term "DEBTOR AFFILIATE(S)" shall mean and refer to entities in which the Debtor had or has an ownership interest, or over which the Debtor has exercised or is exercising control (i.e., corporations, limited liability companies and/or partnerships).

10. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

II.

**Documents Regarding the Debtor's Assets and Liabilities**

- Any and all Documents regarding the purchase of the real property, including but not limited to: loan applications, deeds of trust and promissory notes, personal guarantees of same, and title documents.

- Any and all written correspondence between you and the Debtor regarding the purchase of or any interests in real property assets.

- Any and all written agreements to which both you and the Debtor are parties, including promissory notes, loan agreements, contracts, partnership agreements, limited liability company operating agreements, and Communications.

- Any and all Documents regarding assets you own for the benefit of the Debtor, either directly or indirectly, including but not limited to motor vehicles.

- Any and all Documents reflecting transfers of either real or personal property made by the Debtor, or on behalf of the Debtor to you.

- Any and all Documents reflecting rental of any real property, in which the Debtor has any interest including rental agreements and cancelled checks evidencing payments by tenant(s) occupying the property.

- Any and all Documents, including all cancelled checks, evidencing payments made by you to the Debtor.

- Any and all Documents, including all cancelled checks, evidencing payments made by the Debtor to you.

- Any and all Documents, including all cancelled checks, evidencing payments made by you to the Debtor Affiliates.

- Any and all Documents, including all cancelled checks, evidencing payments made by you, or by any of the Debtor Affiliates, to the Watermarke Tower Apartments located at 705 W 9th St, Los Angeles, California ("Watermarke"), on behalf of the Debtor.

O'Gara also seeks the following categories of documents from you regarding the Debtor Affiliates, as they relate to the Debtor's business and financial condition:

**Documents Regarding the Debtor's Dealings with the Debtor Affiliates**

- All corporate formation documents for Debtor Affiliates, including all amendments.

- Any and all federal and state tax returns prepared and/or filed for the Debtor Affiliates, inclusive of all schedules and attachments.

- Any and all audited and unaudited financial statements concerning the Debtor Affiliates.

- Any and all K-1s for the Debtor Affiliates.

- All bank statements and cancelled checks from any bank or investment account held in the Debtor Affiliate's name(s), or for their benefit.

- Any and all Documents related to any wire transfers for each and every bank account held in the Debtor Affiliate's name(s).

- Any and all Documents identifying the members, officers, and directors for the Debtor Affiliates.

- Any and all written agreements to which the Debtor Affiliates are a party, including, without limitation, each vehicle sales contract, vehicle lease contract, promissory note, loan agreement, assignment, settlement agreement, and personal property lease agreement.

- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, and Communications evidencing each loan arrangement between any Debtor Affiliate and the Debtor.

- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, and Communications evidencing a loan arrangement between the Debtor Affiliates.
- Any and all Documents reflecting monies paid into the Debtor Affiliates on behalf of the Debtor.
- Any and all Documents reflecting transfers of real or personal property to the Debtor Affiliates made by or on behalf of the Debtor. All Documents regarding current and/or prior ownership of vehicles held in the name of any of the Debtor Affiliates.
- Any and all Documents, including all cancelled checks, evidencing payments made by the Debtor Affiliates to the Debtor.
- Any and all Documents, including all cancelled checks, evidencing payments made by and between any of the Debtor Affiliates.
- Any and all Documents, including all cancelled checks, evidencing payments made by the Debtor Affiliates to any individual and/or entity, on behalf of the Debtor.
- Any and all Documents, including all cancelled checks, evidencing payments made by any of the Debtor Affiliates to Watermarke, on behalf of the Debtor.

**Request for Production of Documents and Things For <u>VIKEN CHELEBRIAN</u>**
*In re Joseph Ra*, Bankruptcy Case No. 8:18-bk-11546-ES

I.

**DEFINITIONS**

1. The term "DEBTOR" shall mean and refer to Joseph Ra, an individual.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure, and shall include all tangible sources of information, including but not limited to: all paper, film, tape, computer drive or other medium upon which any electronic, computer stored, verbal, graphic, or pictorial information or image can be recorded, stored, written, printed, typed, drawn, produced, or reproduced in any fashion including all correspondence, memoranda, interoffice and intra-office communications, handwritten and other notes, analyses, agreements, contracts, books, files, charts, quotations, accounting records, audit work papers, worksheets, costs sheets, rate sheets, ledgers, price quotations, proposals, bids, receipts, manuals, lists, tables, financial analyses, spreadsheets, diagrams, studies, outlines, records, reports, agendas, minutes, photographs, drawings, sketches, brochures, schedules, calendars (paper and electronic), diaries, electronic mail ("email"), instant messages (and the equivalent), text messages, computer hard drives, computer servers, discs, CDs, DVDs, tapes, computer back-up tapes, video or audio tape recordings, voicemail messages, photocopies, computer-sorted or computer-retrievable information, information from hand-held electronic devices (including Blackberries, iPhones, mobile phones, pagers and other electronic mechanisms) and computer print-outs and programs or other data compilations from which information can be obtained or translated into usable form. The definition of "document" encompasses not only the original but also any copy reflecting or containing, or having attached thereto, any alterations, notes, comments, or other writing or material not appearing on the original, and shall also include drafts, revisions of drafts and other preliminary or preparatory material, from whatever source, underlying, supporting, or used in the preparation of any "document." The term "document" also includes any removal "post-it" notes, tape flags, or other attachments or exhibits affixed to any of the foregoing.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE" means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term "COMMUNICATIONS" means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, e-mails, facsimiles, letters, memoranda, meetings, notes, speeches, or other transfer of information, whether written, oral, or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests transcribes or records any such communication.

6. The term "YOU" or "YOUR" shall mean and refer to Viken Chelebian.

7. The term "PETITION DATE" shall refer to and mean April 24, 2019, the date that DEBTOR filed a voluntary chapter 7 petition, Bankruptcy Case No. 8:19-bk-11546-ES.

8. The term "RELEVANT PERIOD" means and refers to the seven year period commencing on April 24, 2012, and ending on the PETITION DATE, i.e., April 24, 2019.

9. The term "DEBTOR AFFILIATE(S)" shall mean and refer to entities in which the Debtor had or has an ownership interest, or over which the Debtor has exercised or is exercising control (i.e., corporations, limited liability companies and/or partnerships).

10. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

II.

**Documents Regarding Money Loan to the Debtor, Owed to the Debtor by you, and/or Invested by the Debtor**

- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, partnership agreement, limited liability company operating agreements, California.
- Secretary of State filings, and Communications evidencing a loan arrangement between you and the Debtor.
- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, partnership agreement, limited liability company operating agreements, California Secretary of State filings, and Communications evidencing a loan arrangement between you and any of the Debtor Affiliates.
- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, partnership agreement, limited liability company operating agreements, California Secretary of State filings, and Communications evidencing each business transaction entered into between you and the Debtor.

- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, partnership agreement, limited liability company operating agreements, California Secretary of State filings, and Communications evidencing each business transaction entered into between you and any of the Debtor Affiliates.
- Any and all Documents, including all cancelled checks, evidencing payments made by you on behalf of the Debtor to any person and/or entity.
- Any and all Documents, including all cancelled checks, evidencing payments made by ETSI to any person and/or entity on behalf of the Debtor Affiliates.
- Any and all Documents, including all cancelled checks, evidencing payments made by the Debtor to you.
- Any and all Documents, including all cancelled checks, evidencing payments made by the Debtor to ETSI.
- Any and all Documents, including all cancelled checks, evidencing payments made to you by any of the Debtor Affiliates.
- Any and all Documents, including all cancelled checks, evidencing payments made to ETSI by any of the Debtor Affiliates.

**Documents Regarding Money Loaned to the Debtor or owed to the Debtor**

- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, partnership agreement, limited liability company operating agreements, California Secretary of State filings, and Communications evidencing a loan arrangement between ETSI and the Debtor.
- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, partnership agreement, limited liability company operating agreements, California Secretary of State filings, and Communications evidencing a loan arrangement between ETSI and any of the Debtor Affiliates.
- Any and all Documents, including all cancelled checks, evidencing payments made by you to the Watermarke Tower Apartments located at 705 W 9th St, Los Angeles, California ("Watermarke") on behalf of the Debtor.
- Any and all Documents, including all cancelled checks, evidencing payments made by you to the Watermarke on behalf of any of the Debtor Affiliates.
- Any and all Documents, including all cancelled checks, evidencing payments made by ETSI to the Watermarke on behalf of the Debtor.
- Any and all Documents, including all cancelled checks, evidencing payments made by ETSI to the Watermarke on behalf of any of the Debtor Affiliates.

**Documents Regarding Employment and/or Compensation or Commissions**

- Any and all Documents evidencing payments related to wages, commissions or other forms of compensation arising from an employment and/or agency relationship between you and the Debtor.
- Any and all Documents evidencing payments related to wages, commissions or other forms of compensation arising from an employment and/or agency relationship between the Debtor and ETSI.
- Any and all Documents or Communications evidencing an employment and/or agency relationship between you and the Debtor.
- Any and all Documents or Communications evidencing an employment and/or agency relationship between ETSI and the Debtor.

**Documents Regarding the Debtor's Interests in Corporate Entities**

- Any and all Documents or Communications evidencing any interest of the Debtor in ETSI, including any Schedule K-1s, corporate records and documents, all operating agreements, including any amendments thereto.
- Any and all Documents or Communications evidencing any interest of the Debtor's in the Debtor Affiliates.

**Documents Regarding Any Agreements for Goods and Services with the Debtor**

- Any and all Documents or Communications evidencing an agreement for the Debtor to provide goods and/or services to you.
- Any and all Documents or Communications evidencing an agreement for the Debtor to provide goods and/or services to ETSI.
- Any and all Documents or Communications evidencing an agreement for you to provide goods and/or services to the Debtor.
- Any and all Documents or Communications evidencing an agreement for you to provide goods and/or services to any of the Debtor Affiliates.

**Request for Production of Documents and Things For DAVID SPREEN**
*In re Joseph Ra*, Bankruptcy Case No. 8:18-bk-11546-ES

**I.**

**DEFINITIONS**

1. The term "DEBTOR" shall mean and refer to Joseph Ra, an individual.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure, and shall include all tangible sources of information, including but not limited to: all paper, film, tape, computer drive or other medium upon which any electronic, computer stored, verbal, graphic, or pictorial information or image can be recorded, stored, written, printed, typed, drawn, produced, or reproduced in any fashion including all correspondence, memoranda, interoffice and intra-office communications, handwritten and other notes, analyses, agreements, contracts, books, files, charts, quotations, accounting records, audit work papers, worksheets, costs sheets, rate sheets, ledgers, price quotations, proposals, bids, receipts, manuals, lists, tables, financial analyses, spreadsheets, diagrams, studies, outlines, records, reports, agendas, minutes, photographs, drawings, sketches, brochures, schedules, calendars (paper and electronic), diaries, electronic mail ("email"), instant messages (and the equivalent), text messages, computer hard drives, computer servers, discs, CDs, DVDs, tapes, computer back-up tapes, video or audio tape recordings, voicemail messages, photocopies, computer-sorted or computer-retrievable information, information from hand-held electronic devices (including Blackberries, iPhones, mobile phones, pagers and other electronic mechanisms) and computer print-outs and programs or other data compilations from which information can be obtained or translated into usable form. The definition of "document" encompasses not only the original but also any copy reflecting or containing, or having attached thereto, any alterations, notes, comments, or other writing or material not appearing on the original, and shall also include drafts, revisions of drafts and other preliminary or preparatory material, from whatever source, underlying, supporting, or used in the preparation of any "document." The term "document" also includes any removal "post-it" notes, tape flags, or other attachments or exhibits affixed to any of the foregoing.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE" means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term "COMMUNICATIONS" means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, e-mails, facsimiles, letters, memoranda, meetings, notes, speeches, or other transfer of information, whether written, oral, or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests transcribes or records any such communication.

6. The term "YOU" or "YOUR" shall mean and refer to David Spreen.

7. The term "PETITION DATE" shall refer to and mean April 24, 2019, the date that DEBTOR filed a voluntary chapter 7 petition, Bankruptcy Case No. 8:19-bk-11546-ES.

8. The term "RELEVANT PERIOD" means and refers to the seven year period commencing on April 24, 2012, and ending on the PETITION DATE, i.e., April 24, 2019.

9. The term "DEBTOR AFFILIATE(S)" shall mean and refer to entities in which the Debtor had or has an ownership interest, or over which the Debtor has exercised or is exercising control (i.e., corporations, limited liability companies and/or partnerships).

10. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

**II.**

**Documents Regarding Money Loaned to the Debtor or Invested with the Debtor**

- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, and Communications evidencing a loan arrangement between you and the Debtor.
- Any and all promissory notes, loan agreements, contracts, UCC-1s, Letters of Credit, and Communications evidencing a loan arrangement between You and any entities affiliated with the Debtor, including Equity Tax Solutions, Inc., Ra Global Resources, LLC; Blue East Holdings, LLC; ESM, LLC; ESM Enterprise, LLC; Phantom Global, LLC; East Holdings Group, Inc.; or 3000 Benedict Canyon, LLC.
- Any and all Documents, including all cancelled checks, evidencing payments made by You to the Debtor.
- Any and all Documents, including all cancelled checks, evidencing payments made by You to any entities affiliated with the Debtor, including Equity Tax Solutions, Inc., Ra Global Resources, LLC; Blue East Holdings, LLC; ESM, LLC; ESM Enterprise, LLC; Phantom Global, LLC; East Holdings Group, Inc.; or 3000 Benedict Canyon, LLC.
- Any and all Documents evidencing money being invested by You with the Debtor or with any of his affiliates, including Equity Tax Solutions, Inc., Ra Global Resources, LLC; Blue East Holdings, LLC; ESM, LLC; ESM Enterprise, LLC; Phantom Global, LLC; East Holdings Group, Inc.; or 3000 Benedict Canyon, LLC.

**Documents Obtained by You in Connection with Investigations by You Directed at the debtor or his Affiliates**

- Any and all Documents obtained by You in connection with any investigations or lawsuits directed at the Debtor.
- Any and all Documents obtained by You in connection with any investigations or lawsuits directed at the Debtor's affiliates, including Equity Tax Solutions, Inc., Ra Global Resources, LLC; Blue East Holdings, LLC; ESM, LLC; ESM Enterprise, LLC; Phantom Global, LLC; East Holdings Group, Inc.; or 3000 Benedict Canyon, LLC.